**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| vs. | )    CR No. 2:23-CR-20071-SHL |
| | ) |
| EDWARD ALLEN ET AL., | ) |
| | ) |
|     Defendants. | ) |

**UNITED STATES' RESPONSE IN OPPOSITION
TO DEFENDANT'S MOTION *IN LIMINE***

The United States hereby responds in opposition to defendants' motion *in limine*, doc. 252, and respectfully asks the Court to permit the introduction of evidence of (1) the Zastava, Model: PAP M85NP, Caliber: 556, Rifle, serial number: M85NP009164 recovered by MPD on January 19, 2023, and (2) uncharged crimes and other bad acts committed by the defendants and their co-conspirators because the evidence is relevant, and the evidence of other crimes, wrongs, or acts is intrinsic to the charge of causing death by use of a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(j) and is not subject to Rule 404(b). For the reasons set forth below, the defendants' motion should be denied.

## I.    Procedural History

On February 6, 2024, a federal grand jury returned a First Superseding Indictment, charging the defendants with one-count of causing death by use of a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. §§ 924(j) and 2. Doc. 56. The alleged underlying

crime of violence is murder in aid of racketeering ("VICAR murder"), in violation of 18 U.S.C. §
1959(a)(1) and 2. *Id*. at 9.

On January 30, 2025, the defendants filed a joint *Motion in Limine* to preclude certain
evidence pursuant to Federal Rules of Evidence 401, 403, and 404. Doc. 252. This case is
scheduled for trial on May 27, 2025. Doc. 267.

## II.      **Relevant Facts**

The Unknown Vice Lords ("UVL") is a violent criminal street gang that operates throughout
the Western District of Tennessee and elsewhere. UVL is a subset of the Almighty Vice Lord
Nation, which originated in Chicago, Illinois. The UVL itself has several subsets, including the
Ghost Mob subset ("UVL-Ghost Mob"), which also operates throughout the Western District of
Tennessee.

On January 10, 2019, Ronald Terry, a/k/a "Big Pokey," Chief (leader) of UVL Memphis,
and his girlfriend were murdered while sitting in their car in broad daylight. The night of Big
Pokey's murder, UVL-Ghost Mob members met, and the acting Chief issued an order to engage
in retaliatory shootings against Traveling Vice Lord members, who were rumored to be responsible
for Big Pokey's murder. In the days following Big Pokey's murder, UVL-Ghost Mob members
sought to find the person(s) responsible for the murder of their chief and seek retribution.

Victim T.J., who was a low-ranking UVL-Ghost Mob member under Big Pokey's
leadership, was rumored to have been involved in Big Pokey's murder. A few days later, on
January 15, 2019, Memphis Police Department (MPD) officers responded to a call at the New
Horizon Apartments in Memphis for an injured individual and found T.J. lying face down on the
sidewalk behind a residence. T.J. sustained multiple gunshot wounds and was pronounced dead at
1:47 a.m. T.J. was last seen alive in the late evening of January 14, 2019, at a residence located on

2

Ketchum Road in Memphis, Tennessee. He was seen leaving the residence with Allen, Rodgers, and Grant.

MPD crime scene investigators processed the scene, took photos, and collected evidence, including numerous cartridge casings that were subsequently processed by the Tennessee Bureau of Investigation (TBI) Memphis Crime Laboratory examined as described below.

| Exhibit 001-b | (5) 380 automatic cartridges |
|---|---|
| Exhibit 002-a | (1) 7.62 x39mm cartridge case |
| Exhibit 003-a | (2) 223 Remington cartridge cases |
| Exhibit 004-a | (4) 40 S&W cartridge cases |
| Exhibit 005-a | (1) 380 automatic cartridge case |
| Exhibit 006-a | (8) 9mm Lugar cartridge cases |
| Exhibit 006-b | (1) 9mm Lugar cartridge case |
| Exhibit 006-c | (1) 9mm Lugar cartridge case |

A firearms examiner, TBI Special Agent Brock Sain, examined two .223 Remington cartridge cases (Exhibit 3a) and determined to have been fired from the same firearm.[1] All casings were entered into the IBIS system for potential NIBIN leads. The .223 Remington cartridge casing (Exhibit 3a) came back as a possible NIBIN lead with a .223 Remington cartridge casing recovered by MPD from a homicide that occurred on January 13, 2019, at 5931 Hickory Leaf Cove, Memphis, Tennessee. The victim in the January 13, 2019, homicide was a member of the Traveling Vice Lords, a rival gang of the Unknown Vice Lords. The homicide occurred three days after Ronald Terry's murder.

On January 19, 2023, MPD recovered a Zastava, Model: PAP M85NP, Caliber: 556, Rifle, serial number: M85NP009164, from a juvenile who is unaffiliated with UVL Ghost-Mob. Another

---

[1] Agent Brock also determined that the four 40 S&W cartridge cases (Exhibit 4a) were examined and determined to have been fired from the same firearm. The examiner indicated that the characteristics present on Exhibit 4a are most common to Glock pistols. The (10) 9mm Lugar cartridge cases (Exhibits 6a-c) were examined. Exhibits 6b and 6c were determined to have been fired from the same firearm.

firearms examiner, TBI Special Agent Shandra Lynch, examined the Zastava and compared it to the .223 cartridge casings that were recovered from the crime scene. In her report, Agent Lynch stated the following:

> Examination and test firing of Exhibit 007-a (Zastava Serbia, model Pap M85 NP, 5.56x45mm (223 Remington) caliber semi-automatic pistol, S/N M85-NP009164) revealed it to be in normal operating condition with the safety feature functioning.

> The [223 Remington] cartridge cases in Exhibit 003-a were microscopically compared to the test fired cartridge cases from Exhibit 007-a. The [223 Remington] cartridge cases in Exhibit 003-a bear the same class characteristics and some similar individual characteristics as the test fired cartridge cases from Exhibit 007-a. These similarities are insufficient to determine whether or not the cartridge cases in Exhibit 003-a had been fired in the firearm in Exhibit 007-a.

> However, there is sufficient agreement of class characteristics and individual characteristics to determine that the cartridge cases in Exhibit 003-a were extracted and ejected from the firearm in Exhibit 007-a.

> Agent Lynch also examined the bullet fragments that the medical examiner removed from

T.J.'s body when conducting T.J.'s autopsy. In her report, Agent Lynch stated the following regarding the bullet jacket fragment that was removed form T.J.'s right lung:

> "…Based on these microscopic examinations, the bullet jacket fragments in Exhibits 001-c and 002-c1 bear rifling characteristics common to a variety of firearms that range from .22 to .25 caliber classes produced by numerous manufacturers."

At trial, Agent Lynch is expected to testify consistent with her reports.

Furthermore, at least one government witness is expected to testify that the Zastava appeared to be the same gun they had seen in the defendants' possession the night of the murder.

### III.   ARGUMENT

#### A.  The Evidence Collected on January 19, 2023, is Relevant and Admissible.

The Zastava rifle collected as evidence in this case is relevant. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. The Sixth Circuit "applies

4

an extremely liberal standard for relevancy." *United States v. Whittington*, 455 F.3d 736,738 (6th Cir. 2006).

Relevancy may be understood as consisting of necessary components: materiality and probative value. 1 McCormick on Evid. § 185 (8th ed.). "Materiality concerns the fit between the evidence and the case. It looks to the relation between the propositions that the evidence is offered to prove and the issues in the case." *Id*. If the evidence is offered to help prove a proposition that is not a matter in issue, the evidence is immaterial. *Id*. The second component of relevancy is probative value, that is, the tendency of evidence to establish the proposition that it is offered to prove. *Id*.

Here, evidence of the Zastava firearm that was recovered on January 19, 2023, is both material and probative.[2] The defendants are charged with causing death by use of a firearm during and in relation to a crime of violence, specifically, murder in aid of racketeering ("VICAR murder"). At trial, the United States will offer expert testimony from Agent Lynch that the .223 casings (Exhibit 003-a) recovered from the crime scene on January 15, 2019, were compared to the Zastava firearm (Exhibit 007-a) and Agent Lynch is expected to testify that based on that comparison she determined that the .223 caliber casings recovered from the crime scene (Exhibit 003-a) were extracted and ejected from the Zastava firearm (Exhibit 007-a). Moreover, the United States anticipates that at least one of its witnesses will testify that the seized Zastava appears to be one of the guns the defendants possessed on the night of T.J.'s murder. Thus, the Zastava firearm

---

[2] In their motion, the defendants seek to exclude admission of the ammunition and magazines that MPD recovered on January 19, 2023, however, the United States only intends to introduce the Zastava firearm and does not intend to introduce any ammunition or magazines seized on January 19, 2023.

is relevant and admissible evidence because it establishes the connection between the seized firearm, the defendants, and evidence located at the scene of T.J.'s murder.

### B. The Evidence Collected on January 19, 2023, is Not Substantially Outweighed by Unfair Prejudice.

Relevant evidence may be excluded when "its probative value is substantially outweighed by a danger of . . . unfair prejudice." Fed. R. Evid. 403. Evidence is not unfairly prejudicial because it harms the defendant's case. It is unfair only if it tends to suggest a decision on an improper basis. Rule 403 shields a defendant against unfair prejudice, not against all prejudice. *United States v. Sims*, 708 F.3d 832 (6th Cir. 2013); *see also United States. v. Gibbs*, 182 F.3d 408, 430 (6th Cir. 1999). Certainly, a gun with ballistic connections to cartridge cases found at the crime scene where the victim was murdered is probative to the case against the defendants. Especially here, when a witness is expected to testify the Zastava firearm in question appeared to be one of the guns the defendants possessed on the night of T.J.'s murder. The probative value evidence of the Zastava firearm is not substantially outweighed by its prejudicial effect because this evidence will not confuse the issues, mislead the jury, cause an undue delay, waste time, or needlessly present cumulative evidence. Fed. R. Evid. Rule 403.

### C. The Evidence is Intrinsic to the Charged Offense.

Federal Rule of Evidence 404(b) allows the introduction of evidence of uncharged criminal conduct if offered to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident," provided that the prosecution give reasonable notice of the evidence. However, in RICO, VICAR, and other conspiracy-related prosecutions, the government need not always rely on Rule 404(b) to admit such evidence. In the RICO and VICAR context, evidence of such uncharged acts is admissible as direct evidence of a necessary, intrinsic component of the RICO-related offense. *See United States v. Fowler*, 535 F.3d 408, 422 (6th Cir.

2008) (holding evidence of uncharged acts in RICO conspiracy case appropriately not admitted under Rule 404(b) but properly admitted as evidence of guilt tending to show membership and participation in a criminal enterprise).

The Sixth Circuit has recognized that Rule 404(b) "is not implicated" when the prior acts are "part of a continuing pattern of illegal activity" or when they are "inextricably intertwined" with the indicted crime. *United States v. Rios*, 830 F.3d 403 (6th Cir. 2016); *see also United States v. Buchanan*, 213 F.3d 302, 311 (6th Cir. 2000) (remanded for re-sentencing on other grounds) ("evidence that constitutes 'a continuing pattern of illegal activity'" is not considered an "other act," and, therefore, is not governed by Rule 404(b)) (quoting *United States v. Barnes*, 49 F. 3d 1144, 1149 (6th Cir. 1995)); *United States v. Dimora*, 843 F. Supp. 2d 799, 823, 854 (N.D. Ohio 2012) ("Intrinsic acts, or those 'inextricably intertwined' with the crime charged, . . . or 'part of a single criminal episode,' . . . are admissible and beyond the reach of Rule 404(b)") (citations omitted); *United States v. Soliman*, 813 F.2d 277, 279 (9th Cir. 1987) ("evidence should not be treated as 'other crimes' evidence when 'the evidence concerning the [other] act and the evidence concerning the crime are inextricably intertwined'") (quoting *United States v. Aleman*, 592 F.2d 881, 885 (5th Cir. 1979)).[3]

---

[3] More generally, the Sixth Circuit "has recognized the admissibility of *res gestae*, or background evidence, in circumstances when the evidence includes conduct that is 'inextricably intertwined' with the charged offense." *United States v. Churn*, 800 F.3d 768, 779 (6th Cir. 2015) (citation omitted). "Proper background evidence has a causal, temporal[,] or spatial connection with the charged offense." *Id.* (citation and internal quotation marks omitted). "Such evidence may include evidence that is a prelude to the charged offense, is directly probative of the charged offense, arises from the same events as the charged offense, forms an integral part of [a] witness's testimony, or completes the story of the charged offense." *Id.* (citation and internal quotation marks omitted); *see also Barnes*, 49 F.3d at 1149 (6th Cir. 1995) ("'Intrinsic' acts . . . are those that are part of a single criminal episode."). "*Res gestae* is sometimes also known as 'intrinsic evidence.'" *Churn*, 800 F.3d at 779. "Intrinsic acts are those that are inextricably intertwined with the criminal act charged or a part of the criminal activity." *Id.* "Intrinsic acts" are distinct from "extrinsic acts," "which are those [acts] that occurred at different times and under different circumstances from the

Given the government will not rely on Rule 404(b) in such circumstances for admissibility, "the government has no duty to disclose the other crimes or wrongs evidence." *Barnes*, 49 F. 3d at 1149; *see also United States v. Moore*, 495 F. App'x 680, 685-86 (6th Cir. 2012) (evidence of drug buys not previously noticed to the defense under Rule 404(b) and admitted without a cautionary instruction from the Court were properly admitted as "direct evidence of the conspiracy itself as evidence of a 'continuing pattern' of the same nature and type of criminal conduct"). The 1991 Advisory Committee note to Rule 404(b), moreover, makes clear that the 1991 amendments adding a pre-trial notice requirement in criminal cases "does not extend to evidence of acts which are 'intrinsic' to the charged offense." Fed. R. Evid. 404(b), Advisory Committee note, 1991 Amendments; *see also Barnes*, 49 F.3d at 1149 (citing the 1991 Advisory Committee note to Rule 404(b) for the same proposition).

In RICO and VICAR cases, evidence of uncharged crimes and other bad acts is frequently necessary to prove the existence of the charged enterprise, the means and methods of its operation, and the pattern of racketeering activity in which the enterprise engaged. As noted, the Sixth Circuit has clearly recognized that evidence of uncharged acts is admissible in RICO-related prosecutions if such uncharged conduct serves to prove the elements of the underlying racketeering conspiracy offense. *See Fowler*, 535 F.3d at 422 (evidence of uncharged murder properly admitted as to RICO conspiracy charge because it tended to prove defendant's membership in the conspiracy and intent to further and facilitate the enterprise's criminal endeavor); *Rios,* 830 F.3d at 426 (evidence of

---

offense charged." *Id.* (citation and internal quotation marks omitted). Although the "distinctions among *res gestae*, inextricably intertwined evidence, intrinsic evidence, and background evidence are far from clear," the Sixth Circuit has treated these concepts similarly. *Id.* (citation and internal quotation marks omitted). Notably, however, "*[r]es gestae* evidence does not implicate Federal Rule of Evidence 404(b), which generally bars evidence of past acts to prove character, . . . with some exceptions." *Id.* (citation omitted).

prior shooting and other uncharged acts admissible in trial for racketeering and drug distribution conspiracies).

Courts in nearly every other Circuit have similarly clarified the distinction between 404(b) evidence and evidence tending to prove the essential elements of a RICO conspiracy. *See, e.g.*, *United States v. Henley*, 766 F.3d 893, 914-15 (8th Cir. 2014) ("evidence of uncharged crimes was admissible in a RICO prosecution as 'proof of an enterprise, of the continuity of racketeering activity, and of the defendant's knowledge of, agreement to, and participation in the conspiracy'") (citation omitted); *United States v. Guerrero*, 768 F.3d 351, 365 (5th Cir. 2014) (holding "evidence 'of an uncharged offense arising out of the same transactions as the offense charged in the indictment is not extrinsic evidence within the meaning of Rule 404(b),'" and finding evidence of uncharged murder, drug trafficking, and extortion admissible in RICO and VICAR prosecution) (citation omitted); *United Sates v. Palacios*, 677 F.3d 234, 245 (4th Cir. 2012) (in RICO and VICAR prosecution, upholding admission of evidence of uncharged crimes committed by the defendant because the evidence "was express proof of the conduct for which [the defendant] was indicted" and, therefore, Rule 404(b) did not apply).

The District of Columbia District Court has offered an evaluation of 404(b) evidence in the context of a RICO conspiracy case that is instructive. In *United States v. Edelin*, 128 F. Supp. 2d 23 (D.D.C. 2001), the court explained the following:

> [T]he definition of "other crimes evidence" is murky in a RICO and drug distribution conspiracy case. Evidence of other crimes related to the RICO enterprise and drug conspiracy charged does not come within the definition of Rule 404(b). Rather, evidence of criminal wrongdoing that does not relate to specific dates or incidents charged in the indictment could be independently admissible as direct proof of the charged offenses. This is true if the evidence is of acts which are "inextricably intertwined" with a charged crime. In a case such as this one where the crime charged is a conspiracy, then Rule 404(b) may not apply because the "other crimes evidence" may be direct evidence of the conspiracy itself.

9

*Id.* at 48 (internal citations omitted).

In *United States v. Mejia*, the Second Circuit evaluated a similar argument in an MS-13 RICO conspiracy case where the defendant appealed the admission of prior uncharged drug trafficking activities and an uncharged shooting. 545 F.3d 179 (2d Cir. 2008). The court summarily rejected the defendant's argument that admission of these uncharged acts was improper 404(b) evidence, holding that "MS-13's involvement in narcotics trafficking was an element of the charged offenses, and as a result, *evidence of narcotics trafficking is not prior act evidence, but rather direct evidence of the charged offense*." *Id.* at 206 (emphasis added). With respect to the uncharged shooting incident, the court found no error, holding that "[t]he district court admitted the evidence *to show the existence of the racketeering enterprise*, and it expressly instructed the jury as to the limited use it could make of that evidence." *Id*. (emphasis added). Finally, the court explained the relationship between what defense counsel argued was 404(b) evidence, as opposed to direct evidence proving the essential elements of the crimes charged. Specifically, the court stated:

> Where, as here, the existence of a racketeering enterprise is at issue, evidence of uncharged crimes committed by members of that enterprise, including evidence of uncharged crimes committed by the defendants themselves, is admissible "to prove an essential element of the RICO crimes charged—the existence of a criminal enterprise in which the defendants participated."

*Id*. (quoting *United States v. Matera*, 489 F.3d 115, 120 (2d Cir. 2007)) (upholding admission of evidence of uncharged murders). The *Mejia* court further held, "[t]he evidence was also admissible to show the existence of the conspiracy with which both Appellants were charged." *Id*. at 206-07 (citing *United States v. Diaz*, 176 F.3d 52, 79 (2d Cir. 1999) ("Where . . . the indictment contains a conspiracy charge, uncharged acts may be admissible as direct evidence of the conspiracy itself." (internal quotation marks omitted)).

Similarly, in *United States v. Salerno*, the Seventh Circuit explained, "to convict [defendant] for the charged crimes, the government was required to prove, beyond a reasonable doubt, the existence of an enterprise. Because enterprise was an essential element of the crimes charged, the proffered evidence cannot properly be characterized as 'other crimes' evidence, and thus, Federal Rule of Evidence 404(b) does not apply." 108 F.3d 730, 738 (7th Cir. 1997) (citing *United States v. Blyden*, 964 F.2d 1375, 1378 (3d Cir. 1992); *United States v. Towne*, 870 F.2d 880, 886 (2d Cir.1989); *United States v. Neapolitan*, 791 F.2d 489, 506 (7th Cir. 1986); *United States v. Jackson*, 33 F.3d 866, 873 (7th Cir. 1994) (finding Rule 404(b) inapplicable because defendant's failure to file tax returns was "intricately connected" with the charged conspiracy to impede and obstruct the IRS)).

Specifically, the Government may properly introduce evidence of acts committed by gang members other than the defendants to prove the existence, purpose, and activities of the UVL-Ghost Mob enterprise. It is well-established, especially in the RICO and VICAR context, that uncharged crimes are admissible when they are directly probative of "an essential element of the crime." *United States v. Johnson*, 803 F.3d 279, 283 (6th Cir. 2015). Crimes committed by members of the enterprise are directly probative of the "enterprise" element of RICO. *See United States v. Garland*, 320 F. App'x 295, 305 (6th Cir. 2008) (evidence of a murder admissible as proof of the existence of a RICO enterprise—the Outlaw Motorcycle Club—that used violence against its members and associates to preserve and further the enterprise); *see also United States v. Coonan*, 938 F.2d 1553, 1561 (2d Cir. 1991) (murders committed before defendant joined enterprise admissible to prove existence and nature of enterprise); *United States v. Finestone*, 816 F.2d 583, 585-87 (11th Cir. 1987) (evidence of murder, kidnapping, and drug transactions admissible to prove the pattern of racketeering activity, continuity and defendant's knowing

11

participation in the enterprise). A defendant need not have personally committed or agreed to commit an act for that act to be relevant. *See United States v. Tocco*, 200 F.3d 401, 425 (6th Cir. 2000) ("[A] defendant need not know about every member and component of the enterprise; he need only know 'the general nature of the enterprise and that the enterprise extends beyond his role.'") (internal citation omitted); *United States v. Saadey*, 393 F.3d 669, 676 (6th Cir. 2005) ("In order to obtain a conviction for RICO conspiracy, the government does not need to prove that the defendant committed or agreed to commit two predicate acts himself, or even that any overt acts have been committed.").

Here, Count One of the First Superseding Indictment charges the defendants with causing death through the use of a firearm during and in relation to a crime of violence (VICAR murder), in violation of 18 U.S.C. § 924(j), 924(c), 1111(a), and 2. To prove the underlying crime of violence the United States must prove the following elements beyond a reasonable doubt:[4]

| | |
|---|---|
| First: | An enterprise affecting interstate or foreign commerce—namely, Unknown Vice Lords - Ghost Mob—existed; |
| Second: | The enterprise was engaged in racketeering activity; |
| Third: | The defendant had or was seeking a position in the enterprise; |
| Fourth: | The defendant committed, or aided and abetted, the alleged murder; and |
| Fifth: | The defendant's general purpose in committing or aiding and abetting the murder was to gain entrance to, or maintain or increase position in, the enterprise. |

Therefore, because it is necessary that the United States prove that an enterprise engaged in racketeering existed at the time of the murder, it is necessary for the United States to introduce

---

[4] *United States v. Odum*, 878 F.3d. 508 (6th Cir. 2017) (citing *United States v. Concepcion*, 983 F.2d 369, 381 (2d Cir. 1992); *United States v. Fiel*, 35 F.3d 997, 1003 (4th Cir. 1994)).

evidence of crimes and other acts committed by the defendants and their co-conspirators in the UVL– Ghost Mob enterprise. Specifically, the United States intends to introduce evidence of the following racketeering activity committed by member of the UVL – Ghost Mob: drug distribution, robbery, and murder. These crimes are admissible to prove, among other things, the existence and continuity of the enterprise, the defendants' agreement to take part in the enterprise, and the defendants' knowledge of, and participation in, racketeering activity, all of which are elements to prove the existence of the UVL – Ghost Mob enterprise.

The First Superseding Indictment need not allege any specific "overt acts" or "specific predicate acts that the defendant agreed personally to commit" that were committed in connection with the racketeering enterprise. *See United States v. Glecier*, 923 F.2d 496, 500 (7th Cir. 1991) (citing *United States v. Torres Lopez*, 851 F.2d 520, 525 (1st Cir. 1988); *United States v. Neapolitan*, 791 F.2d 489, 495-98 (7th Cir. 1986)). In cases such as this, "facts external to the predicate acts may, and indeed should be considered" to establish continuity of racketeering activity. *United States v. Busacca*, 936 F. 2d 232, 238 (6th Cir. 1991) (citing *United States v. Kaplan*, 886 F.2d 536, 543 (2d Cir. 1989)); *see also Guerrero*, 768 F.3d at 365 ("'government is not limited in its proof of a conspiracy or racketeering enterprise to the overt or racketeering acts alleged in the indictment'") (citations omitted); *Henley*, 766 F.3d at 914-15 (no abuse of discretion to allow the introduction of an uncharged murder that was not included in the "overt acts" section of the indictment).

Specifically, the government may properly introduce evidence of acts committed by the defendants or other members of UVL – Ghost Mob to  prove the existence, purpose, and activities of the enterprise. It is well-established, especially in the RICO and VICAR context, that uncharged crimes are admissible when they are directly probative of "an essential element of the crime."

13

*United States v. Johnson*, 803 F.3d 279, 283 (6th Circ. 2015). Crimes committed by members of the enterprise are directly probative of the "enterprise" element of RICO. *See United States v. Garland*, 320 F. App'x 295, 305 (6th Cir. 2008) (evidence of a murder admissible as proof of the existence of a RICO enterprise—the Outlaw Motorcycle Club—that used violence against its members and associates to preserve and further the enterprise); *see also United States v. Coonan*, 938 F.2d 1553, 1561 (2d Cir. 1991) (murders committed before defendant joined enterprise admissible to prove existence and nature of enterprise); *United States v. Finestone*, 816 F.2d 583, 585-87 (11th Cir. 1987) (evidence of murder, kidnapping, and drug transactions admissible to prove the pattern of racketeering activity, continuity and defendant's knowing participation in the enterprise). A defendant need not have personally committed or agreed to commit an act for that act to be relevant. *See United States v. Tocco*, 200 F.3d 401, 425 (6th Cir. 2000) ("[A] defendant need not know about every member and component of the enterprise; he need only know 'the general nature of the enterprise and that the enterprise extends beyond his role.'") (internal citation omitted); *United States v. Saadey*, 393 F.3d 669, 676 (6th Cir. 2005) ("In order to obtain a conviction for RICO conspiracy, the government does not need to prove that the defendant committed or agreed to commit two predicate acts himself, or even that any overt acts have been committed.").

## IV.    CONCLUSION

Therefore, the United States respectfully requests this Court deny the defendant's motion *in limine* and permit the introduction of evidence of: (1) the Zastava, Model: PAP M85NP, Caliber: 556, Rifle, serial number: M85NP009164 seized by MPD on January 19, 2023, and (2) uncharged crimes and other bad acts committed by the defendants and their co-conspirators because it is intrinsic to the charged crimes, and not subject to Rule 404(b).

Respectfully submitted,

REAGAN T. FONDREN
Acting United States Attorney

By:    *s/ Lisa M. Thelwell*
Lisa M. Thelwell
Florida Bar No. 100809
Trial Attorney
Violent Crime & Racketeering Section
United States Department of Justice
1301 New York Avenue NW, Ste 700
Washington, D.C.  20530
Telephone:  202-353-7809
Email: lisa.thelwell@usdoj.gov

*/s/ Christopher Usher*
Christopher Usher
SC Bar No. 101885
Trial Attorney
Violent Crime & Racketeering Section
United States Department of Justice
1301 New York Avenue NW, Ste 700
Washington, D.C.  20530
Telephone:  202-514-3594
Email: christopher.usher2@usdoj.gov

15

**U.S. v. Edward Allen et al.**                              **Case No. 2:23-cr-20071-SHL**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 11, 2025, I electronically filed the foregoing with the

Clerk of the Court by using the CM/ECF system and emailed counsel for the defendants a copy of

the same.

<u>*/s/ Lisa M. Thelwell*</u>
Lisa M. Thelwell
Florida Bar No. 100809
Trial Attorney
Violent Crime & Racketeering Section
United States Department of Justice
1301 New York Avenue NW, Ste 700
Washington, D.C.  20530
Telephone:  202-353-7809
Email: lisa.thelwell@usdoj.gov